Jose Carlos Guzman Bernal
P.O. Box 5346
El Paso, Texas 79956



RECEIVED
JUN 09 2025
CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

JOSE GUZMAN BERNAL,
   Petitioner,

v.

Civil No. 3:25-cv-00113-SLG

PAM BONDI, United States Attorney General,
U.S. DEPARTMENT OF JUSTICE,
UNITED STATES OF AMERICA,
   Respondents.

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

AMENDED MOTION FOR EMERGENCY PETITION CHALLENGING UNLAWFUL CLASSIFICATION AS A FUGITIVE AND VIOLATION OF DUE PROCESS DURING EXTRADITION FROM MEXICO

(Challenging Extradition Proceedings, Fugitive Classification, and Constitutional Violations)

**NOW COMES** the Petitioner, **Jose Carlos Guzman Bernal**, a Mexican national presently detained at the Reclusorio Preventivo Varonil Oriente in Mexico, pursuant to an Interpol Red Notice issued solely at the request of the United States, following an indictment returned by a federal grand jury in the United States District Court for the District of Alaska, *United States v. Guzman*, Case No. **3:14-cr-00093-SLG-DMS**. (See Exhibit A). Petitioner respectfully submits this **Amended Emergency Petition for Writ of Habeas Corpus** pursuant to **28 U.S.C. § 2241**, seeking immediate judicial review of a series of constitutional and procedural violations arising from his pending extradition and continuing classification as a "fugitive."

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to pursuant to 28 U.S.C. § 2241. (Dkt. 1) in the Central District of California Case No. 2:25-cv-03666-SRM-AGR. The Central District of California issued an order Transferring Action to the District of Alaska. **See Exhibit A.**

Petitioner brings this action to challenge the legality of the extradition request and the underlying conduct of U.S. authorities on the following grounds:

1. Whether the United States is in compliance with Mexican judicial criteria for extradition under the U.S.–Mexico Extradition Treaty;
2. The denial of Petitioner's fundamental right to challenge extradition while detained abroad, in violation of his right to access judicial review;
3. The unconstitutional application of the *fugitive disentitlement doctrine*, which improperly bars Petitioner from presenting his legal claims in U.S. courts;
4. The erroneous and unsupported comparison of the Mexican offense of *Asociación Delictuosa* with the U.S. offense of *Conspiracy*, invoked to justify extradition in violation of the dual criminality requirement;
5. The unlawful identification of Petitioner based solely on immigration records or the uncorroborated and self-interested statements of cooperating witnesses, contrary to due process;
6. The illegal interception and use of Petitioner's private communications while he was physically located in Mexico, without judicial authorization or consent of Mexican authorities, in violation of Mexican sovereignty and international legal norms;
7. The violation of Petitioner's rights under the **Sixth Amendment** of the United States Constitution, stemming from the prolonged delay between the return of the indictment on **October 22, 2014**, and the formal lodging of an extradition request years later **September 23, 2022.**

Petitioner submits that his arrest and continued detention in Mexico—initiated solely at the behest and under the direction of U.S. authorities—precludes any lawful or rational basis for maintaining his classification as a "fugitive." Under binding legal precedent and core due process protections, the United States may not invoke the fugitive disentitlement doctrine when it has orchestrated the Petitioner's custody abroad. To do so would unjustly deprive him of access to judicial remedies while shielding potential constitutional violations from proper scrutiny.

Moreover, the government's continued reliance on this designation—despite having placed Petitioner in custody through international cooperation mechanisms—constitutes a flagrant and ongoing violation of his rights under the **Fifth Amendment**, including the right to due process and meaningful access to the courts of the United States.

For all of these reasons, Petitioner respectfully urges this Honorable Court to exercise its equitable authority and provide immediate review of this petition. The issues presented herein raise urgent constitutional concerns and implicate binding obligations under the U.S.–Mexico Extradition Treaty and established international law. Prompt judicial intervention is necessary to prevent further irreparable harm to Petitioner, uphold the rule of law, and preserve the legitimacy of the extradition process.

## GROUNDS FOR RELIEF

## WHETHER U.S. IS IN COMPLIANCE WITH MEXICAN JUDICIAL CRITERIA FOR EXTRADITION

Extradition proceedings between the United States and Mexico are governed principally by the U.S.-Mexico Extradition Treaty of 1978, as well as relevant provisions of the Mexican Constitution, the Ley de Extradición Internacional, and associated procedural codes. While the Mexican judiciary plays a formally limited role in evaluating the underlying merits of the foreign prosecution, it nonetheless conducts a thorough legal and procedural review to ensure treaty compliance and respect for national sovereignty and due process guarantees.

This argument addresses whether the United States consistently adheres to the legal criteria and procedural safeguards that Mexican courts must examine prior to issuing a favorable opinion on extraditability. The analysis focuses on two core areas of concern: (1) the principle of dual criminality, and (2) identification and evidentiary sufficiency.

### I. Dual Criminality: Fundamental Incompatibility Between U.S. and Mexican Legal Frameworks

Under U.S. law, a conspiracy conviction may rest merely on an agreement to commit an offense and the commission of any overt act. • In contrast, under Mexican law, Asociación Delictuosa generally requires evidence of a structured group formed for the repeated commission of crimes, with defined roles and continuity. This divergence in legal thresholds raises serious concerns regarding the validity of equivalency claims. Mexican courts have on multiple occasions, scrutinized these disparities and expressed reluctance to uphold extradition where the "actus reus and mens rea" of the offense are not adequately mirrored under Mexican penal law.

Under Article 2 of the Extradition Treaty Between the United States and Mexico, extradition shall be granted only if the offense for which it is requested is punishable under the laws of both countries by deprivation of liberty for a period of at least one year. This requirement—known as the principle of *dual criminality*—demands a substantive alignment between the statutory elements of the crime in both jurisdictions. Mexican courts evaluate whether the factual and legal components of the U.S. offense correspond to a clearly defined crime under Mexican penal law.

In practice, U.S. prosecutors frequently submit indictments predicated on broad federal statutes such as 21 U.S.C. §§ 846 (Conspiracy) and 841 (Drug Trafficking), alleging these are equivalent to Mexico's *Asociación Delictuosa* or *Delincuencia Organizada*. However, this purported equivalency fails under scrutiny due to material divergences in statutory elements and structural features. For example:

- Under U.S. law, a conspiracy conviction may rest solely upon an agreement to commit a criminal offense and the commission of any overt act in furtherance thereof.

- In contrast, Mexican law under Article 164 of the Federal Penal Code requires a demonstrable association or gang of three or more individuals formed with continuity and purpose to repeatedly engage in criminal activity, often with hierarchical roles and structure.

This incongruity raises significant legal concerns about the validity of the equivalency claimed. Mexican courts have repeatedly emphasized that superficial similarities are insufficient; the offenses must share core elements of *actus reus* and *mens rea.*

**Petitioner's Legal Position**

Petitioner, Mr. Jose Guzman Bernal, respectfully invokes the principle of dual criminality, a cornerstone of international extradition law and a binding requirement under the U.S.–Mexico Extradition Treaty. He submits that the United States' request for his extradition based on a charge of Conspiracy under U.S. law fails to satisfy this principle and is therefore legally untenable.

Mr. Guzman is currently sought by U.S. authorities pursuant to an indictment issued by the United States District Court for the District of Alaska in *United States v. Guzman*, No. 3:14-cr-

00093-SLG-DMS, charging him with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. The U.S. contends that this charge is equivalent to *Asociación Delictuosa* under Mexican law and is not.

## A. Legal Standard for Evaluating Dual Criminality

The U.S. Supreme Court in *Factor v. Laubenheimer*, 290 U.S. 276 (1933), held that the dual criminality requirement is met when the "particular act charged is criminal in both jurisdictions," regardless of differing nomenclature. However, federal courts uniformly require that the elements of the offenses be substantially similar.

In *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999), the court clarified that "the focus of the dual criminality analysis is on the underlying conduct, not the label of the offense," but emphasized that the comparison must involve a meaningful analysis of analogous elements and punishment structures.

## B. Comparative Analysis of Statutory Elements

- **U.S. Conspiracy (21 U.S.C. § 846):** Requires (1) an agreement between two or more individuals to violate federal drug laws, (2) intent to commit the offense, and (3) an overt act in furtherance of the conspiracy.

- **Mexican Asociación Delictuosa (Penal Code Art. 164):** Applies to any person belonging to an association or gang of three or more persons formed to commit crimes. It does *not* require a specific agreement to commit a particular crime, nor any overt act.

In *In re Extradition of McMullen*, 989 F.2d 603, 612 (2d Cir. 1993), the Second Circuit held that extradition must be denied where the offenses "are not sufficiently analogous in substance and structure." This reasoning directly applies here, where the U.S. offense is based on specific agreements and concrete plans, while the Mexican offense is predicated on participation in a loosely defined criminal association.

## C. Disparities in Sentencing Structures

The stark differences in sentencing exposure further demonstrate the non-equivalence of these offenses:

- **Mexico (Art. 164, Penal Code):** Imposes 5 to 10 years of imprisonment and a fine.
- **United States (21 U.S.C. § 841(b)(1)):** Involves a mandatory minimum of 10 years and up to life imprisonment, especially where drug quantities are substantial or sentencing enhancements apply.

In *Matter of Extradition of Russell*, 789 F.2d 801, 803–04 (9th Cir. 1986), the court found that materially different penalties undermine a finding of dual criminality. Likewise, in *In re Extradition of Valles*, 958 F. Supp. 2d 1024 (N.D. Ill. 2013), the court declined extradition where sentencing disparities and definitional differences made the offenses non-analogous.

### D. Application of the Rule of Lenity

Where ambiguity exists in treaty interpretation, the rule of lenity governs. In *United States v. Thompson*, 851 F.2d 348, 352 (10th Cir. 1988), the Tenth Circuit reaffirmed that "extradition treaties should be strictly construed, and any ambiguities resolved in favor of the person sought." Given the significant divergence in legal structure and punitive consequences, the rule of lenity compels a finding against extradition.

For the foregoing reasons, Petitioner respectfully urges this Court to find that the offenses of *Asociación Delictuosa* under Mexican law and Conspiracy under U.S. law are not sufficiently analogous to meet the dual criminality requirement under Article 2 of the U.S.–Mexico Extradition Treaty. The disparities in statutory elements, the absence of overt acts in the Mexican offense, and the marked differences in sentencing exposure render this extradition request legally defective.

Accordingly, Petitioner respectfully requests that the extradition be denied.

## II. Extradition Must Be Denied Due to Insufficient Identification and Evidentiary Deficiencies

### A. Misidentification Based on Shared Alias and Compromised Records

Petitioner, **Jose Carlos Guzman Bernal,** asserts that the identification upon which the United States relies to justify his extradition is constitutionally and factually defective. The

6 | P a g e

Case 3:25-cv-00113-SLG    Document 1    Filed 06/09/25    Page 6 of 17

government's case rests on a deeply flawed premise: that Mr. Guzman is the individual referred to in its criminal prosecution and related witness testimony. In fact, the record shows that multiple individuals were using the name **Juan Carlos Ayon Cardenas**, and the identification procedures employed by the United States are unreliable, misleading, and violate fundamental principles of due process.

Between approximately 2008 and 2010, Mr. Guzman used the name **Juan Carlos Ayon Cardenas**, with a date of birth of **August 2, 1980**, for work and identification purposes in Yuma, Arizona. However, this same alias was simultaneously used by his brother, **Pedro Miguel Guzman Bernal**, who shared similar physical characteristics. Compounding the confusion, the real individual named **Juan Carlos Ayon Cardenas**—the lawful holder of that identity—was also actively using the name during the same period, as substantiated by a set of differing photographs issued by the Arizona Motor Vehicle Division (MVD).

Thus, at the time the United States alleges Mr. Guzman engaged in criminal conduct, *three distinct individuals* were operating under the identity of **Juan Carlos Ayon Cardenas**, creating irreconcilable confusion and casting substantial doubt on the reliability of any identification premised on that alias.

## B. Flawed Witness Identification Based on Obsolete Immigration Photograph

The central identification evidence against Mr. Guzman comes from the government's cooperating witness, **Jasmin Sanchez**, who identified Mr. Guzman from an **immigration photo** taken in connection with his **deportation on July 28, 2010**. That photograph, however, is not only outdated—it was taken at a time when Mr. Guzman had just lost access to the fraudulent identity of *Juan Carlos Ayon Cardenas*.

Ms. Sanchez's identification was made years after the relevant events, based solely on this outdated image, with no in-court identification, biometric confirmation, or corroborating evidence. Ms. Sanchez's statement of identification exhibits she could recognize an individual name "Carlos" without more, in this case she referred to Mr. Guzman's brother not Guzman. Such identification is inherently unreliable, especially given the alias confusion and the presence of another family member—Mr. Guzman's brother—who was also known to use the same identity with nearly indistinguishable features.

Courts have repeatedly held that identification based solely on immigration records and vague witness recollection does not satisfy the standards required for extradition. In *In re Extradition of Cervantes Valles*, 268 F. Supp. 3d 1332 (M.D. Fla. 2017), the court refused extradition where the government failed to produce reliable, corroborated identification evidence. Likewise, *United States v. Glover*, 479 F.3d 511, 519 (7th Cir. 2007), recognized the dangers of relying on uncorroborated visual identification, particularly when no contemporaneous records or scientific analysis is offered.

### C. Government's Use of Compromised Immigration and DMV Records

The United States has failed to establish that it made a proper, individualized identification of Mr. Guzman for extradition purposes. The records submitted in support of extradition rely on:

- A photograph from a 2010 deportation event when Mr. Guzman ceased use of the false identity;
- DMV records from Arizona that show multiple individuals using the same name and similar identifiers;
- Unverified witness statements with no biometric, documentary, or physical corroboration.

This reliance on compromised and duplicative identity records—especially when the alias was being used simultaneously by multiple people—falls far short of the evidentiary burden. In *United States v. Karake*, 443 F. Supp. 2d 8, 52 (D.D.C. 2006), the court recognized that extradition must be grounded in "substantial and competent evidence," and that reliance on tainted, circumstantial, or misattributed information violates due process.

### D. Due Process and Treaty Violations

Under the U.S.–Mexico Extradition Treaty and U.S. constitutional principles, extradition cannot proceed where the government fails to demonstrate probable cause using reliable evidence that the person sought is the individual named in the indictment. See *18 U.S.C. § 3184*; *Matter of Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986).

Here, Petitioner respectfully argues that no competent evidence links him to the criminal conduct alleged, and the identification relied upon by the United States is inherently flawed. The government has not met its burden under either the Treaty or federal law.

For the foregoing reasons, Mr. Guzman respectfully moves this Court to deny his extradition. The identification is based on:

1. Use of a shared alias by multiple individuals, including Mr. Guzman's brother and the actual identity holder;

2. Witness testimony based on a 2010 immigration photo, taken after Mr. Guzman lost access to the alias;

3. DMV records from Arizona that further prove alias confusion and identity overlap;

4. Absence of biometric, physical, or in-court identification of Petitioner.

These circumstances create a substantial risk of misidentification and legal error. The United States has not established probable cause sufficient to warrant extradition. The request must be denied in the interest of justice and due process.

### III. Illegal Wiretaps Conducted in Mexico Violate International Law, Mexican Sovereignty, and Render Extradition of Mr. Guzman Unlawful

Mr. Jose Carlos Guzman Bernal further objects to his extradition on the independent and compelling ground that **the United States obtained and used unlawfully intercepted communications while he was physically present in Mexico**, without securing proper legal authorization from Mexican authorities or adhering to applicable international protocols.

These wiretaps, conducted either directly by U.S. agents or in coordination with local actors acting under U.S. instruction, were executed **outside the framework of the U.S.-Mexico Mutual Legal Assistance Treaty (MLAT)** and without any formal diplomatic request or court-approved cooperation from the Mexican government. Such actions constitute **a blatant violation of Mexico's sovereignty, Article 16 of the Mexican Constitution**, which guarantees the right to private communications, and **Mexico's Federal Telecommunications and Broadcasting Law.**

### A. Unauthorized Surveillance Undermines the Extradition Request

The U.S.-Mexico Extradition Treaty, particularly Article 9, prohibits extradition where the request is contrary to the law of the requested State—in this case, Mexico. The interception and subsequent use of Mr. Guzman's private telephone communications without judicial oversight or mutual legal process **violates both Mexican domestic law and international legal norms**, rendering the extradition request legally void.

At no point was Mr. Guzman notified of such surveillance, nor was any Mexican judicial authority involved in approving or authorizing such an operation. Instead, **the evidence was acquired covertly, without jurisdiction or legal basis**, and later relied upon to support Mr. Guzman's identification and extradition to the United States. This conduct is not merely improper—it is **a constitutional and international violation that cannot be cured post hoc** by the government's attempt to retroactively validate tainted evidence.

## B. U.S. Courts Prohibit the Use of Evidence Derived from Conduct that "Shocks the Conscience"

The United States judiciary has repeatedly held that **evidence obtained through conduct that violates international law or offends fundamental fairness** is inadmissible in extradition proceedings. In *United States v. Toscanino*, 500 F.2d 267, 281 (2d Cir. 1974), the Second Circuit ruled that "due process of law is violated when the government's agents...obtain [a defendant's] presence through methods that shock the conscience." There, as here, illegal wiretaps conducted abroad were a key basis for objecting to jurisdiction and the admissibility of the evidence.

Moreover, *United States v. Mitro*, 880 F.2d 1480, 1482–83 (1st Cir. 1989), reinforced that **surveillance conducted abroad must comply with treaty obligations and cannot violate the sovereignty of the host nation.** Under the *Restatement (Third) of the Foreign Relations Law of the United States § 432*, a nation may not exercise law enforcement functions in another country—including surveillance—without express consent.

These principles were further underscored in *United States v. Emmanuel*, 565 F.3d 1324, 1331–32 (11th Cir. 2009), where the Eleventh Circuit held that claims involving U.S. misconduct abroad, particularly in extradition or removal contexts, cannot be ignored when they implicate the Constitution or international norms.

## C. Violations of International and Treaty Law Require Judicial Intervention

Under Article 41 of the **Vienna Convention on Diplomatic Relations**, to which both the United States and Mexico are parties, foreign agents may not perform law enforcement functions—including wiretapping—within another state's territory without its consent. The actions described here clearly violate that prohibition.

Furthermore, **Articles 9 and 10 of the U.S.-Mexico Extradition Treaty** require adherence to procedural safeguards, including the lawful acquisition of evidence and compliance with domestic law. The unauthorized collection and use of Mr. Guzman's private communications violates these provisions and renders the supporting materials legally and diplomatically defective.

## D. Mr. Guzman's Right to Due Process Has Been Irreparably Harmed

The unlawful surveillance in this case compounds existing due process violations. The United States has relied on **unreliable, uncorroborated witness testimony** and **a deeply flawed identification process** to justify its extradition request. The addition of **illegally obtained wiretap evidence**, collected in violation of Mexican law and international treaties, further taints the entire proceeding and undermines the legitimacy of the government's request.

Allowing extradition to proceed under these circumstances would not only violate **Mr. Guzman's rights under the Fifth Amendment**, but would **undermine the integrity of this Court** by lending its authority to a process predicated on unlawful and diplomatically offensive conduct.

For the foregoing reasons, Mr. Jose Carlos Guzman Bernal respectfully urges this Court to deny the extradition request. The government's reliance on:

- Illegally intercepted communications obtained in violation of Mexican sovereignty;
- Procedurally deficient and diplomatically unauthorized surveillance;
- Evidence tainted by identity confusion and uncorroborated witness statements;

renders the extradition proceedings **fundamentally unjust, constitutionally infirm, and incompatible with the rule of law.**

This Court has both the authority and the duty to act as a safeguard against arbitrary and unlawful governmental conduct. To permit extradition under these conditions would offend the **Due Process Clause,** violate the **U.S.-Mexico Extradition Treaty**, and breach foundational principles of **international comity and legal reciprocity**

Accordingly, Mr. Guzman respectfully requests that the Court **grant the writ of habeas corpus pursuant to 28 U.S.C. § 2241,** and **deny the extradition request in its entirety.**

## IV. The Statute of Limitation Has Expired Under 18 U.S.C § 3282, Rendering The Indictment Void and The Extradition Request Unlawful.

Petitioner **Jose Carlos Guzman Bernal** further challenges his continued detention and the pending extradition request on the independent ground that the indictment returned against him in **United States v. Guzman,** Case No. 3:14-cr-00093-SLG-DMS (D. Alaska), is now **time-barred** under federal law. The eight-year delay between the return of the indictment and the submission of the extradition request violates the **Speedy Trial Clause,** the applicable **statute of limitations,** and **Article 7 of the U.S.–Mexico Extradition Treaty.**

### A. The Statute of Limitations Has Expired Under 18 U.S.C. § 3282(a)

The indictment charging Mr. Guzman-Bernal with conspiracy to distribute and possess controlled substances was issued on **October 21, 2014.** Under **18 U.S.C. § 3282(a),** non-capital federal offenses, including drug trafficking and conspiracy under 21 U.S.C. §§ 841 and 846, are subject to a **five-year limitations period.** Thus, absent any lawful tolling, the charges against Mr. Guzman-Bernal **expired on October 21, 2019.**

However, the United States did not initiate its formal extradition request until **September 23, 2022,** nearly **three years after the statute of limitations had run.** This delay renders the prosecution of Mr. Guzman-Bernal legally untenable and constitutionally infirm.

### B. No Tolling Under 18 U.S.C. § 3290 Applies: Petitioner Was Not a Fugitive

The tolling provision of **18 U.S.C. § 3290** applies only where the defendant is "fleeing from justice." This requires the government to prove **intentional evasion of prosecution**. In this case, Petitioner was **not a fugitive**. In fact, the U.S. government had knowledge of his **exact location in Mexico** as early as **February 24, 2016**, as evidenced by correspondence with Mexican authorities referencing an ongoing investigation. Mr. Guzman substantiates the above based on the government's initial diplomatic note dated February 2, 2016, Diplomatic Note No. ASJ-03093 and second diplomatic note dated September 23, 2022, No. 22-3398.

Furthermore, Petitioner maintained a **known and documented residence** at **21 Avenida Achicoria, Colonia Cachanilla, Mexicali, Baja California**, as reflected in his **Mexican Tax Registry (SAT)** and unique personal identifier **GUBC7808191ZA**, issued in **August 2014** (See Exhibit B). He did not conceal his whereabouts, assume a new identity, or evade detection. Therefore, the government's argument for tolling is **inapplicable as a matter of law**.

In *United States v. Gonzalez*, No. 13 Cr. 254 (S.D.N.Y. Sept. 19, 2013), the district court held that mere presence abroad does not toll the statute of limitations unless there is clear evidence of a **specific intent to avoid prosecution**. Mr. Guzman-Bernal's transparency and traceability directly negate any such finding.

## C. The Delay Violates Due Process Under the Fifth Amendment

The **Fifth Amendment guarantees a fair and timely prosecution**. The government's eight-year delay, despite knowing the Petitioner's location, constitutes a clear **due process violation**. This delay has prejudiced Petitioner's ability to gather evidence, secure witness testimony, and prepare a defense—particularly in light of the cross-border context.

Such inexcusable government inaction undermines the presumption of fairness embedded in extradition proceedings. Courts have consistently held that unreasonable delay in the initiation of prosecution or extradition violates due process, especially where the delay was within the government's control. See *United States v. Lovasco*, 431 U.S. 783, 789–90 (1977).

## D. Extradition is Barred Under Article 7 of the U.S.–Mexico Extradition Treaty

**Article 7 of the Extradition Treaty** between the United States and Mexico explicitly prohibits extradition where "the prosecution or the enforcement of the penalty has become barred by the

13 | P a g e

Case 3:25-cv-00113-SLG    Document 1    Filed 06/09/25    Page 13 of 17

lapse of time according to the laws of either Party." Since the U.S. statute of limitations expired in 2019 and no valid tolling occurred, **extradition is now prohibited under the treaty**.

Mexican courts are likewise required to assess the timeliness of extradition requests under domestic and international law. The United States' delay in requesting extradition until **2022**—for charges dating back to **2014**—represents a **clear breach of the Treaty**, warranting the **automatic denial of the request** under treaty obligations.

### E. Lack of Good Faith and Procedural Integrity

The government's prolonged inaction and failure to diligently pursue extradition until the expiration of the limitations period reflects **a lack of good faith**. Treaties of extradition are grounded in principles of **reciprocity, diligence, and mutual legal respect**. To exploit a delay of its own making—while depriving the Petitioner of his constitutional protections—would subvert the very purpose of international judicial cooperation.

## V. CONCLUSION

For the foregoing reasons, Petitioner **Jose Carlos Guzman Bernal** respectfully prays that this Honorable Court grant the relief sought in this **Amended Emergency Petition for Writ of Habeas Corpus** pursuant to **28 U.S.C. § 2241**. Petitioner has shown that his continued detention and the pending extradition proceedings are founded on multiple legal and constitutional violations, including:

- The **failure to meet the dual criminality requirement** under Article 2 of the U.S.–Mexico Extradition Treaty, as the offense of *Conspiracy* under U.S. law is not sufficiently analogous to *Asociación Delictuosa* under Mexican law;

- A **fatally flawed identification process**, built upon shared aliases, compromised records, and uncorroborated testimony;

- The **unlawful interception and use of private communications** obtained in Mexico without judicial authorization or diplomatic process, in violation of both Mexican sovereignty and international law;

- The **improper application of the fugitive disentitlement doctrine**, which denies Petitioner access to justice despite his arrest being orchestrated solely by U.S. authorities;

- The **expiration of the statute of limitations** under 18 U.S.C. § 3282, barring prosecution of the underlying charges;

- A clear **violation of the Sixth Amendment right to a speedy trial**, given the government's unjustified eight-year delay despite knowing Petitioner's location;

- The **breach of Article 7 of the Extradition Treaty**, which prohibits extradition when the prosecution is time-barred under the law of either country;

- The government's **lack of good faith and procedural integrity**, demonstrated by its failure to act diligently and in compliance with international obligations.

The constitutional right to a speedy trial is not theoretical—it is foundational. As the Supreme Court held in *Klopfer*, *Dickey*, and *Barker*, when the government fails in its duty to prosecute swiftly and lawfully, and such delay prejudices the accused, **dismissal is the only appropriate remedy**.

Accordingly, Petitioner respectfully requests that this Court:

1. **Issue a writ of habeas corpus** pursuant to 28 U.S.C. § 2241;

2. **Declare that Petitioner's continued detention and pending extradition are unlawful**;

3. **Order the immediate denial of the extradition request** submitted by the United States;

4. **Hold that the application of the fugitive disentitlement doctrine is unconstitutional** under these facts;

5. **Declare that the charges are time-barred** under U.S. law and that extradition is forbidden under Article 7 of the Treaty;

6. And **grant such other and further relief** as this Court deems just and proper in the interest of justice, due process, and international legal integrity.

Respectfully submitted,

*/s/ Jose Carlos Guzman Bernal*

**Jose Carlos Guzman Bernal**

## CERTIFICATE OF SERVICE

I, **Jose Carlos Guzman Bernal** hereby certify that on this May 29, 2025, a true and correct copy of the foregoing **Amended Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** was placed in the hands of authorized correctional staff at **Reclusorio Preventivo Varonil Oriente**, to be properly mailed via international postal service, first-class postage prepaid, addressed to the following:

**Clerk of Court**
United States District Court
District of Alaska
222 West 7th Avenue, Room 229
Anchorage, Alaska 99513-7564
United States of America

And a courtesy copy was also directed to:

**United States Attorney's Office**
District of Alaska
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513-7564
United States of America

Executed on this 29 day of May, 2025.

Respectfully submitted,

*/s/ Jose Carlos Guzman Bernal*

**Jose Carlos Guzman Bernal**
Petitioner, Pro Se
P.O. Box 5346
El Paso TX. 79954

Jose Carlos Guzman Bernal
P.O. Box 5346
El Paso, TX. 79956

Retail  
RDC 99

U.S. POSTAGE PAID
FCM LG ENV
EL PASO, TX 79901
MAY 31, 2025
$2.31
S2323W500841-25

United States District Court
District of Alaska
222 W. 7th Avenue, Room 229 Box/Suite #4
Anchorage, AK 99513